Mr. O'Byrne My name is Patrick O'Byrne and I represent the defendant appellant, Mr. William Wichmann. Your Honor, the facts of the case are fairly simple. The complaining witness here is an employee dealer at Harris Casino. The defendant William Wichmann is a patron gambler of the casino. This entire incident is recorded on a DVD tape from Harris Casino. The plaintiff, Mr. O'Byrne, is an employee dealer at Harris Casino. This entire incident complaining witness here testified that her hair was pulled to the point where her head jerked back. That is not true. That didn't happen either. That's not in the tape. Not whatsoever. You know, we characterize this not as a pulling of the hair, but as a touching. And not pulling, not restricting her head movement. And I'm not really trying to minimize it. It's on tape. It is what it is. But he did not pull back. He did not pull her head. Okay. But see, her head didn't jerk back. But again, as a battery definition, what a contact of an insulting or provoking relationship. Yes. Well, she was certainly provoked. I'll judge what was she provoked to do. My guy was just, you know, it was playful conduct at a casino. He's just goofing around. He's in a casino atmosphere. There's cameras. There's security. There's co-employees. You know, nobody reacted to this. Nobody thought that they witnessed that was anything unusual that was going on in that casino. There was no reaction by anybody. Not by security. Not by anybody from the Illinois Gaming Commission that was there. Not from the, you know, the eye in the sky. There was just, it was a non-event. It was non-event. They didn't think they were witnessing a crime. They didn't think they were witnessing a battery. It was just playful conduct that did not rise to a crime. That's what our argument is. I argued to Judge Gavilan on the motion for a new trial that when I was on the elevator going up to the third floor in the Will County Courthouse, I was unintentionally battered more with people reaching over me to touch the buttons on the elevator. You know, this is not... Is the demo the difference? A dealer and a casino are... Was this a crap table? Yes, it was a crap table. We used to call them group games instead of dealers, the crap table. But anyway, one of the things her job is to do is not only just is to keep an eye on what the players are doing. Nobody's moving stuff that shouldn't be moved and what have you. And so riding an elevator and having contact with somebody versus coming up and having contact with the dealer who's working is apples and oranges, isn't it? I wouldn't say it's apples and oranges. I would say that both of it is a knowing act that causes contact that could be interpreted as provocative or insulting. But obviously, when I was standing in that elevator, it wasn't the intent of anybody standing behind me trying to touch a button to do that. My client obviously knowingly touched her hair. But again, there was no criminal intent. He's just playing. He's just goofing around. He had no criminal intent. He had no criminal intent. Well, his intent's just got to be to knowingly make contact, right? He didn't have to intend to provoke her. Well, looking at the definition of knowingly, the definition of knowingly is... Isn't that wonderful? You... Knowingly is one that's practically certain to... Yes. Get the... Mr. Wichman, by what he did, intended to or would be characterized as practically certain to be caused by his conduct that this would be insulting or provoking. It's just horseplay at a casino. Well, I get it. We live in a different world than I grew up in. And in this day and age, and people's sensibilities have changed. In this day and age, I'm just trying to think, what reasonable man would walk up to someone, whether working or not, and he'd give them... Judge, I hear what you're saying. It is a different world. It's now not appropriate in any way, shape, or form to touch somebody. But is it a crime? Is it a crime? I think there has to be some kind of objective analysis of, you know, when... When is it a crime? When does it rise to the level of a crime? It's just not contact, just simple contact alone, that we would eliminate all differences between criminal and civil cases. You know, there's got to be a mens re. There's got to be a mens re. You know, there's got to be a mens re here. And it may have been inappropriate what he did. We suggest that it wasn't criminal. It wasn't criminal. And the fact that nobody was alarmed to this is evidence that nobody thought that this was unusual at a casino setting. I'm just... It doesn't make a difference in this case, but I'm just wondering, in light of the video, why the defendant agreed to bench this case, because I think those arguments might impress the jury. Well, hindsight being 20-20. I would have requested a jury, but I... When I saw the tape and I saw the allegation was pulling, and I played it over and over and over and over again, and I didn't see her head being pulled back, I didn't see her head being jerked back as she testified. Well, and I've watched the video, and I agree with you that it doesn't show her head being jerked back, but I'm not sure jerking her head back is, you know, a lovely offense. No, it's not, Judge. It certainly is not. It's not. But I think it tells you something about the complaining witness. I, you know, subjectively, obviously, she was extremely offended by this. I mean, even though it took her, by her own testimony, a while to process, she was obviously, you know, offended by this. But we just suggest, in light of the definition of knowingly, in light of the facts of the situation and the, you know, the case that I had cited, you know, look at the context. The context was a casino atmosphere. I'm just suggesting, Your Honor, that it just doesn't rise to the level of criminal activity. Basically, that's my argument. Thank you so much. Counsel? Good afternoon. May it please the Court? May it please the Court? Counsel? My name is Kelly Craft, and I represent the people of the State of Illinois in this matter. This Court should affirm the lower court's ruling that defendant committed battery because the evidence presented at trial was sufficient to prove beyond a reasonable doubt that defendant knowingly made physical contact of an insulting or provoking nature with the victim when he snuck up behind the victim while she was working and pulled her hair without her consent. I would argue against adopting an inflexible rule that assumes that a man engaging in the pulling of a woman's hair or tugging of a woman's hair while she is performing her job is non-criminal. I would urge this Court to consider the particular facts of this case. So you're saying that you have to look at the whole context. It isn't just the touching or pulling, however it really comes up. But that isn't really the issue. But it's more that he was from behind while she's working, the professional relationship there that sets us apart from maybe someone, a playground or something where there's some other social setting perhaps. So is that what really differentiates us from maybe something that is... Yes, Your Honor. I would say that I think you have to look at the context. In one of the cases that I mentioned in my brief, People v. Peck, it claimed that a particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs. In that case, I talked about it a bit, that was People v. Peck. But in another case also that has a similar situation, it was a case that actually defense counsel mentioned and that was People v. Rosario. And that was a simple case where a man who had prior, he knew a woman, he was in a prior relationship with her, they were in a workplace, and he came up behind her and sat in a chair in a lunchroom and his knees touched her. And she complained and that man was charged with battery. And what the appellate court ruled in that case was that it depends on the particular facts of that situation. And I would argue that when you take a look at the particular facts of this situation, the facts at trial that were presented show that the defendant snuck up behind a woman while she was working, having her eyes on a table where there's arguably hundreds of dollars on the table, concentrated on the table. She's in the middle of her job and she testified that he said to her, I get you like that, don't you? Defendant testified that he thought pulling the victim's hair would make her laugh. He testified that everyone at the table was having fun. He testified that he did not think it was a bad idea to pull her hair. Through his actions, he was clearly intending to get some sort of reaction from the victim, and he did.  Well, by the way, you know, this description, I've watched the video. In fact, I thought I'd watch it twice because in my 20 years, I didn't see any head getting turned back. I didn't see, you know, because my first read of these facts, I absolutely did that. Well, I didn't see any of that on video. So it was. I don't know that this case is. Does he have to do anything other than just, you know, touch it? Obviously, he made enough contact for her to feel that somebody touched her hair. And it's undoubtedly not a good idea, but there are consequences. You have to watch that video if this is really criminal. Again, I would argue that adopting a rule that says that it's OK for a man to walk up to a woman or a man while they're working and sneak up behind them and tug on their hair. On cross-examination, defendant did say, I tugged it. Yes. So prior to pulling her hair, you were looking at her, right? He said, I mean, I was looking at the center of the table. Right. But as you were approaching her, you formed the idea that you were going to pull her hair. He said, I don't recall that. So prior to pulling her hair, you felt it was a good idea to pull her hair. He said, I guess so. I mean, I didn't think it was a bad idea. Yeah, I mean, no question he did what he did. I mean, they've got the angles. But, you know, a casino is not a good place to do something untoward because the camera is everywhere. And so the video is pretty clear that he did what he did. Would it be the same thing? I mean, is it because of the approaching from behind? Would it be the same thing if he did that, which I find very annoying, and somebody stands on this side of you and taps you on this side of the shoulder? Would that be the same thing? I mean, most people think that's funny and cute. And I can see you over there. Why are you tapping me on the shoulder here? I mean, would it be the same thing because I found that offensive? I mean, do you think that is a battery, the same, you know, somebody tapping me on the shoulder from behind me and they think it's funny? I understand what you're saying. I think that in this particular context with the facts of this case, she wasn't that close to him. She was in the middle of her workstation, and he did sneak up behind her. She didn't know that anybody even was behind her. And he came up and tugged her hair. I understand the argument that he was just having fun, that people are at a casino, they're having a good time. The trial judge said that even maybe he had had a few drinks. But the reaction from the victim, she said, at first, I was in shock. I didn't know what to say at all. It happened very quickly. But then she did say it took me about an hour to process what had happened. I didn't really say anything to anybody. I had gone to the next table, and it wasn't until I went on break, and I was almost sick to my stomach, and then I went and I talked to my manager and said that I had a guest just put his hands on me. I just think under these facts, it is very clear that the defendant violated the battery statute. In response to the question, I just think about that. Okay, I'd like to see a serious video. What did he, same position, everything was the same, and he had tapped her on the shoulder or just, you know, touched her, tapped her on the shoulder, same result? I think you have to look at it from the standpoint of reasonableness. Would a reasonable person be offended by that? And I think it all depends on the entire set of facts that we're going to take a look at. If I'm standing next to somebody at the office, and if somebody comes up and taps me on the shoulder, am I going to say he battered me? When I was in law school, actually, a gentleman behind me pulled my hair when we were sitting there in class. Did I charge him with or accuse him of battery? No. But I will say that this woman was in a different situation. She was an employee. He was a customer. And as I said, walked up behind her. She didn't know who it was and tugged her hair. She was startled. She said she was shocked. Well, yeah, I mean, you can't watch this video of us and say, what in the world were you thinking, pal? But at the same time, you look at this and say, these things seem relatively innocuous. There was no jerking of her head back or anything like that. And so it seems like it's pretty close to the line. I mean, if you ever watch that video, you're startled. You're flying. I mean, what do you think is the real pain in doing that? And I can say ban from the casino or something like that. Does it make a difference whether the hair was pulled or it was just a touch? No, it does not. Okay. From your view of the law, it's the same as battery. Touching or pulling. Correct. The statute that applies in this case, and the defendant was charged under 720 Illinois Compiled Statutes 5-12-382, states that a person commits battery when he or she knowingly, without legal justification, makes physical contact of an insulting or provoking nature with an individual. So tugging would be physical contact. And who determines? From what perspective do you look at insulting or provoking? From the victim's perspective. Well, I mean, it's not – Reasonable person's perspective. As counsel pointed out, this is a criminal case, not a civil case. In a civil case, we have what the NHL has called plaintiff cases where you commit a tort against somebody, but the results are worse than because you've got somebody who is so prone to injury. So now if you've got this insulting or provoking, do we have this thing or does it – this mens rea, does it have to be something that would be reasonably expected to insult or provoke a reasonable person? I don't know. Is it just that we just looked at you as the – what states that there are always some people too sensitive, some people not sensitive enough. But is there going to be a reasonableness on whether the provocation – in other words, did you expect that this was like likely to provoke or insult somebody of reasonable sensibility? Well, when defendant committed the act, he did intend to get some sort of reaction because he did say, I thought it would make her laugh. I would say that the mere fact that it didn't just make her laugh, that she was insulted, felt insulted, shocked, it shouldn't give him a pass that it was okay to come up and do this. And I don't disagree with that, but is every act in our society that's not okay? No. But I would say, again, in this case, when you do look at the factual circumstances and when you do look up cases on the insulting and provoking, they do say it's factual context is what to look at. As I mentioned, she certainly did not consent to anyone pulling her hair. The lewd comment that went along with it, he told her, I get you like that, don't you? She told him after he pulled her hair, don't touch me. It was not appropriate. The actions crossed the line. I think a lot of it comes down to respect for the fellow human beings in the workplace, and he, by crossing the line, going behind a woman in the casino where she was working, there was testimony that this does not typically happen, that people do not go behind a certain area in a casino and make contact with the dealers. The defense even put on a witness that said he didn't witness his friend or associate tug or pull the woman's hair, but he did hear her say, don't touch me. And he told him, when he came back to the table after performing that act, he said, you've got to be careful about putting your hands on people in a casino. You can't do that. Well, nobody's going to argue with that. And, Your Honors, I just would also argue that when the trial judge here took a look at the evidence, he found the witnesses that testified for the State very credible. And when reviewing the evidence in the light most favorable to the State, there is really no basis for this Court to overturn the trial court's decision. That's what the State would argue. Thank you. All right. Thank you. Mr. O'Byrne from Rebuttal. Your Honor, I had no further questions. All right. That's great. Okay, well, thank you both for your arguments here today. This is kind of an intriguing case, actually. And this matter will be taken under advisement. A written disposition will be issued. And we will be in recess until 9 o'clock in the morning.